IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MAY 1996 SESSION

FILED

December 1, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9510-CC-00334 |
| | ) | |
| | ) | Montgomery County |
| v. | ) | |
| | ) | Honorable John W. Gasaway, Judge |
| | ) | |
| DMITRI JOHNSON, | ) | (Sentencing -- Second degree murder) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Edward DeWerff
103 South Third Street
Clarksville, TN 37040

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Karen M. Yacuzzo
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

John W. Carney, Jr.
District Attorney General
        and
Charles Bush
Assistant District Attorney General
204 Franklin Street
Clarksville, TN 37040

OPINION FILED:_____

SENTENCE VACATED; REMANDED

Joseph M. Tipton
Judge

# OPINION

The defendant, Dmitri Johnson, appeals as of right from the twenty-year sentence imposed by the Circuit Court of Montgomery County for his conviction upon a guilty plea for second degree murder, a Class A felony. The defendant contends that the trial court improperly relied upon facts not in evidence in its sentencing decision. He also contends that the trial court improperly applied three enhancement factors and refused to apply two additional mitigating factors. We believe that the case should be remanded for a new sentencing hearing.

This case involves the death of Blanie Watson at the hands of the defendant and Mary Ortiz, for which both were originally charged with first degree murder. The plea to second degree murder was a result of an agreement by which the defendant also testified for the state in the trial of Ms. Ortiz.

The basic facts surrounding the defendant's involvement in the killing are presented in the record on appeal primarily through the transcript of the defendant's guilty plea hearing, but also through his testimony at the Ortiz trial. The defendant was nineteen years old at the time of the killing and had a romantic relationship with Ms. Ortiz at the same time she was having a relationship with the victim. Ms. Ortiz complained to the defendant that the victim was abusing her.

In the early mornings hours of April 19, 1994, the defendant arrived at the Ortiz residence and found the victim inside, shot but still alive. The victim asked the defendant to take him somewhere, but the defendant refused. At some point, the victim grabbed a nearby gun, and a struggle with the defendant ensued, the gun discharging into the floor. The gun jammed and was no longer operable.

2

The struggle continued between the two of them. The defendant stated that he was aware of the victim being a "big drug dealer" with a lot of violent friends and that he feared for his life if the victim had gotten away. The fight continued as the defendant tried to stop the victim from escaping the house. The victim waited outside and the defendant picked up a stick and hit the victim. However, the victim made it across the street into a neighbor's yard, where the fight continued. The two fell to the ground, and the defendant found a rock -- described as the size of a cantaloupe -- and struck the victim in the head. The autopsy performed by Dr. Charles Harlan reflected that the cause of death was "a culmination of the blows to the head as well as the shots to the body."

The defendant went home and told his parents. His parents took him to the police station and he turned himself in. The defendant cooperated with the police from the very beginning.

The record reflects that at the time of the offense, the defendant was a nineteen-year-old high school senior with learning disabilities. Both the defense and the state described the defendant as being used by Ms. Ortiz, with her taking advantage of his mental abilities, emotions and affections. The defendant has no previous convictions or criminal behavior. The defendant expressed his remorse. The state requested that under the circumstances of the case and the defendant's cooperation, the trial court should be lenient in sentencing.

The trial court found the following enhancement factors listed in T.C.A. § 40-35-114 to apply:

> (4) the victim of the offense was particularly vulnerable because of physical or mental disability,
>
> (5) the defendant treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense, and

3

> (9) the defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense.

The trial court found the following mitigating factors listed in T.C.A. § 40-35-113 to apply:

> (9) the defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses,

> (10) the defendant assisted the authorities in locating or recovering any property or person involved in the crime,

> (12) the defendant acted under duress or under the domination of another person, even though the duress or the domination of another person was not sufficient to constitute a defense to the crime, and

> (13) other nonstatutory mitigating factors exist.

The trial court found that the defendant turning himself in to the authorities immediately, giving a statement to authorities, cooperating with the authorities, and testifying against Mary Ortiz constituted mitigating factors under factor (13).

The trial court rejected as a mitigator the defendant's claim that because of his youth, he lacked substantial judgment in committing the offense. See T.C.A. § 40-35-113(6). It did not believe that the fact that the defendant was nineteen was sufficient to mitigate, given his level of intelligence shown by his testimony and actions. The trial court also rejected as a mitigating factor the defendant's claim that the offense was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct. See T.C.A. § 40-35-113(11). It stated that the defendant had time to think and reflect during the course of the events and could have, and should have, stopped many times.

The trial court stated that confinement was necessary to avoid depreciating the seriousness of the offense and was particularly suited to provide an effective deterrence to others likely to commit a similar offense. After noting its

consideration of all of the matters relevant to sentencing, see T.C.A. § 40-35-210(b), it determined that the sentence should be twenty years in the Department of Correction.

The defendant contends that all three enhancement factors were improperly applied and that mitigating factors (6) and (11) should have been applied. In response, the state argues that the enhancement factors apply, but its brief fails to address the mitigating factors. Also, the state asserts that it takes no position on the defendant's request that we impose the minimum sentence of fifteen years.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. §§ 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40-35-210(c).[1] Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d) and (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The defendant's initial complaint is that the trial court improperly relied upon evidence submitted at the Ortiz trial -- not in his guilty plea or sentencing hearings -- to determine the existence of the enhancement factors. He points to the trial court's references to evidence presented in the Ortiz trial by the defendant, Dr. Harlan, an Ortiz neighbor, and police 911 records relative to the defendant having enough time to be aware of the victim's wounded condition when he acted as he did and to his acting without undue excitement or heat of passion.

---

[1] For Class A felonies committed on or after July 1, 1995, the presumptive sentence is the midpoint of the range. See 1995 Tenn. Pub. Acts, ch. 493 (amending T.C.A. § 40-35-210(c)).

6

We note that at a subsequent hearing, defense counsel stated that although he wanted the trial court to reconsider the defendant's sentence, he did not necessarily want a new sentencing hearing. Also, although he filed a motion asking the trial court to supplement the record with the Ortiz trial testimony of the defendant, Dr. Harlan, and William Harrop, counsel said at the hearing that he only wanted the defendant's testimony to be a supplement to the record. In other words, if the record on appeal is deficient because it contains less than all matters considered by the trial court, we note that the defendant was in a position to correct the deficiencies but chose not to. Of course, the state could have supplemented the record, as well, but the obligation lies primarily upon the appellant to insure that the record is complete for appellate review purposes.

Moreover, we note that a significant portion of the record on appeal that supports the defendant's request for lenient sentencing is the transcript of the defendant's testimony in the Ortiz trial. This means that while the defendant complains about the trial court's reliance upon the Ortiz trial evidence in sentencing, he also wants us to consider part of that same evidence in his favor.

Unfortunately, the important fact is that the parties and the trial court relied upon matters that are not evidence in this case. Particularly, the trial court relied upon its own memory of evidence presented at the Ortiz trial in which the defendant was not a party. Although the trial court can take judicial notice of its own orders and judgments in cases before it, see Hughes v. State, 2 Tenn. Crim. App. 71, 73, 451 S.W.2d 696, 697 (1969), reliance upon its own recall of the evidence in those cases is not the same.

7

In State v. Preston Bernard Crowder and Cynthia Diane Southall, 01C01-9304-CR-00143, Davidson County (Tenn. Crim. App. Mar. 14, 1995), this court stated in the context of a sentencing hearing that "we do not think that the trial judge can take judicial notice of the facts, as he remembers them, underlying a guilty plea which he accepted in an unrelated case." Slip op. at 7. Similarly, in State v. Jackie Crowe, 03C01-9606-CC-00225, McMinn County (Tenn. Crim. App. July 29, 1997), this court stated that although a trial court could take judicial notice under Rule 201, Tenn. R. Evid., that a witness testified to particular facts, it would move out of the realm of judicial notice and into the realm of being a witness if the trial court relied upon the credibility of that testimony based upon its memory of the testimony. Slip op. at 5-6.

In Vaughn v. Shelby Williams of Tenn., Inc., 813 S.W.2d 132 (Tenn. 1991), the trial court had considered its extra judicial observations of the plaintiff before trial in deciding the extent of the plaintiff's vocational disability. The supreme court vacated the judgment, concluding that the judge became a witness to the proceedings, which is forbidden by Rule 605, Tenn. R. Evid. Id. at 133-34.

Under the circumstances in this case, we are being asked to review sentencing determinations based upon the trial court's reliance upon its recollection of evidence from another trial that was not presented as evidence in this case. From both the trial court's perspective and the parties' perspectives, substantial information relevant to the enhancing and mitigating factors at issue in this case came from the trial court's recollection of the Ortiz trial evidence. However, none of it is properly a part of the record of the sentencing hearing in this case.

Given such a circumstance, we have no means of conducting a de novo review of the record that would lead to an educated determination of an appropriate

8

sentence.  Therefore, we must vacate the defendant's sentence and remand the case for a new sentencing hearing.

 

 

                                               _____
                                               Joseph M. Tipton, Judge

CONCUR:

_____
Gary R. Wade, Judge

_____
William M. Barker, Judge