**STATE of Tennessee, Plaintiff–Appellee,**

v.

**Efrem Zimbulist JONES, Defendant–Appellant.**

Supreme Court of Tennessee, at Nashville.

Aug. 29, 1994.

**598**

Jeffrey A. DeVasher, Sr. Asst. Public Defender (on appeal), Ralph W. Newman, Asst. Public Defender (at hearing and on appeal), Nashville, for defendant-appellant.

Charles W. Burson, Atty. Gen. and Reporter, Merrilyn Feirman, Asst. Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen., Dan A. Hamm, Asst. Dist. Atty. Gen., Nashville, for plaintiff-appellee.

## *OPINION*

REID, Chief Justice.

This case presents an appeal from the judgment of the Court of Criminal Appeals affirming the imposition of a six-year, range I sentence upon the defendant's conviction for aggravated assault causing serious bodily injury. Permission to appeal was granted in order to decide if certain enhancement factors, set forth in T.C.A. § 40–35–114(6), (10), (16) (1990), were "essential elements of the offense charged" and thus proscribed by T.C.A. § 40–35–114 from use as enhancement factors.

The proof in the case is meager. According to the presentence report, on April 28, 1991, the victim, Cynthia Stroupe, and a companion were walking along 21st Avenue in Nashville, when the defendant came from behind them and grabbed Stroupe's purse. When she resisted, the defendant pushed her to the ground and continued to pull at the purse. The victim's companion then grabbed the purse and they continued to resist, whereupon the defendant released his hold on the purse and ran from the scene. The victim experienced severe inner-cranial bleeding and was hospitalized for ten days. As the result of the injury, she lost her short term memory and her senses of smell and taste, and suffered some impairment of verbal skills. In addition, her front teeth were damaged, and her equilibrium was affected. The record does not otherwise reflect the

extent or expected duration of the victim's injuries.

The defendant was charged with attempted robbery and aggravated assault causing serious bodily injury. T.C.A. §§ 39–13–401 (1991), 39–13–102(a)(1)(A) (1991). He entered into a plea agreement with the State, whereby the State agreed to dismiss the attempted robbery charge and further agreed to recommend the minimum sentence of three years as a range I standard offender on the charge of aggravated assault. At the sentencing hearing, the trial court refused to approve the minimum sentence; nevertheless, the defendant did not withdraw his guilty plea, and he waived his right to a hearing. The court sentenced the defendant to the maximum range I sentence of six years.

Contrary to the provisions of T.C.A. § 40–35–209(c) (1990) and T.C.A. § 40–35–210(f) (1990), the trial court did not articulate the enhancement or mitigating factors upon which it relied in sentencing the defendant. It stated only: "As to the reasons for the term of the years, [they are] the same reasons that I previously stated as being the reasons for rejecting the recommended sentence that [is] part of the plea agreement." In rejecting the original plea agreement, the court had stated:

> [B]ased on your conduct toward the presentence report officer, which is documented in the memorandum which is an exhibit to this hearing and based on the contents of the presentence report, including the nature and circumstances of the offense and various aspects of your past, including your criminal history, your education, your health information, your work history and the entirety of the contents of the presentence report, I have determined that I am not going to accept the recommended sentence....

The probation officer had filed a memorandum with the court stating that the defendant had appeared at her office angry with her over the content of the presentence report, and that the defendant's attitude towards her during this visit had frightened her. The report showed that the defendant had one prior arrest for robbery in November 1989 and one prior arrest for theft in February 1990. The defendant had quit high school six weeks prior to graduation and had made no effort to obtain his graduate equivalency diploma. He admitted having used both cocaine and marijuana while this case was pending. His work history consisted of a succession of jobs held at five different Nashville restaurants over the course of the seven years preceding the sentencing hearing in this case.

The Court of Criminal Appeals found four enhancement factors applicable to the case: § 40–35–114(1), the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; § 40–35–114(6), the personal injuries inflicted upon the victim were particularly great; § 40–35–114(10), the defendant had no hesitation about committing a crime when the risk to human life was high; and § 40–35–114(16), the crime was committed under circumstances under which the potential for bodily injury to a victim was great.

The defendant does not challenge enhancement factor § 40–35–114(1), that he has a history of criminal behavior in addition to that necessary to establish the appropriate range of punishment. However, he asserts that T.C.A. § 40–35–114 prohibits the use of factors (6), (10), and (16) to enhance his sentence for a conviction of aggravated assault causing serious bodily injury.

This Court's review of a sentence is controlled by the Tennessee Criminal Sentencing Reform Act of 1989. T.C.A. § 40–35–117 (1990). To facilitate meaningful appellate review, the Act provides that the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40–35–210(f) (1990). Since T.C.A. § 40–35–114 specifically prohibits the use of enhancement factors that are essential elements of the offense, the trial court must identify the spe-

cific elements of the offense charged and the proof that established the offense before applying an enhancement factor. Where the trial court has complied with these provisions of the statute, the sentence is reviewed *de novo* with a presumption of correctness. T.C.A. § 40–35–401(d) (1990).

> However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the [statutory principles of sentencing] and all relevant facts and circumstances.

*State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). Where, as in this case, the trial court failed to state the mitigating and enhancement factors relied upon, there is no presumption of correctness on appeal. Accordingly, our review is *de novo* upon the record.

Included in the Tennessee Criminal Sentencing Reform Act of 1989 is the structure for imposing punishment on felony offenders. The Act divides felonies into five classifications according to the seriousness of the offenses; it separates offenders into five classifications according to the number of prior convictions; it assigns a span or range of years for each class of crime committed by each class of offenders; and it employs enhancement and mitigating factors to assess the definite sentence within each range. T.C.A. §§ 40–35–105, 40–35–114 (1990 & Supp.1993). This sentencing plan was developed by the Sentencing Commission, in response to a mandate by the legislature, "for use by a sentencing court in determining the appropriate sentence to be imposed in a criminal case." T.C.A. § 40–37–203(a) (1990).

Under the Act's sentencing plan, the trial court is required to consider the following in assessing a sentence:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the enhancement and mitigating factors ...; and

(6) Any statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40–35–210(b) (1990); *State v. Ashby,* 823 S.W.2d 166, 168 (Tenn.1991). The sentencing alternatives available to the trial court are: the imposition of a fine, confinement, probation, restitution, work release and community corrections. T.C.A. § 40–35–104 (1990). In selecting the sentence to be imposed, principles which must be applied include the following:

(1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

(2) The sentence imposed should be no greater than that deserved for the offense committed;

(3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;

(4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;

(5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed....

(6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation and/or community service.

T.C.A. § 40–35–103 (1990). Finally, the appropriate sentence is one which is "justly deserved in relation to the seriousness of the offense," is "fair and consistent [with other

similar cases]," and "prevent[s] crime and promote[s] respect for the law." T.C.A. § 40–35–102 (1990); *State v. Ashby*, 823 S.W.2d at 168.

The nature and extent of the punishment to be imposed for similar offenses committed by similar offenders has been determined by the classification of offenses according to their seriousness and the classification of offenders according to their prior convictions. The only discretion allowed the sentencing court is to accommodate variations in the severity of the offenses and the culpability of the offenders within the ranges of penalties set by the legislature. Even this discretion is restrained under the Act through the establishment of a "presumptive sentence" and the mandatory use of enhancing and mitigating factors.

The minimum sentence is the presumptive sentence. T.C.A. § 40–35–210(c) (1990). The sentence imposed cannot exceed the minimum sentence in the range unless the State proves enhancement factors. If there are enhancement but no mitigating factors, then the court "may set the sentence above the minimum in that range but still within the range." T.C.A. § 40–35–210(d). If there are enhancement and mitigating factors, "the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." T.C.A. § 40–35–210(e).

However, only those enhancement factors specifically authorized by statute may be used to increase a sentence. Further, there are two significant limitations on the use of enhancement factors that may be established by the proof—enhancement factors must be "appropriate for the offense" and "not themselves essential elements of the offense." T.C.A. § 40–35–114. The obvious purpose of these limitations is to exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense. Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment. The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense. As stated by the New Mexico Supreme Court,

> the elements of the offense are *ipso facto* incorporated by the legislature into the base level sentencing for the offense.... To permit consideration of [an] element as an aggravating factor justifying an upward departure in sentencing ... would be repetitive of the punishment the legislature has established for the crime....

*Swafford v. State,* 112 N.M. 3, 810 P.2d 1223, 1236 (1991). These limitations on the use of enhancement factors are consistent with the principles of fairness, consistency and restraint, declared by the Act to be essential to promote justice. The particular circumstances of each case have to be considered when deciding whether an enhancement factor established by the proof may be applied under these limitations. *See State v. Avery*, 818 S.W.2d 365, 369 (Tenn.Crim.App.1991) ("the enhancement factors enumerated by our General Assembly must be analyzed on a case-by-case basis").

The defendant in this case is charged with aggravated assault. The indictment charged that the defendant "... intentionally, knowingly or recklessly did cause serious bodily injury to Cynthia Stroupe, in violation of Tennessee Code Annotated § 39–13–102...." The elements of the offense are: intentionally, knowingly or recklessly causing serious bodily injury, serious bodily injury being defined as a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ or mental faculty, which involves a substantial risk of death, protracted unconsciousness, extreme physical pain, protracted or obvious disfigurement, or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. T.C.A. §§ 39–13–102 (Supp. 1993), 39–11–106(a)(2), (33) (1991). The question with regard to each enhancement factor found by the Court of Criminal Appeals is whether that factor is proven by evidence other than that necessary to establish the offense of aggravated assault causing serious bodily injury.

The Court of Criminal Appeals found that the personal injury inflicted upon the victim was particularly great. T.C.A. § 40–35–114(6). The issue, then, is whether the facts which establish "serious bodily injury" are the same facts which show that the injury was "particularly great." Some courts have held that where the injury inflicted upon the victim was greater than that necessary to constitute aggravated assault, it may be used to enhance a sentence. Those cases, which include several unreported decisions of the Tennessee Court of Criminal Appeals, employed a "degree of harm" analysis in an effort to distinguish the worst offenders from other offenders, characterized as "more typical," and based the enhancement factor on the degree to which the conduct departs from, and is worse than, the typical offense. In *State v. Felix*, 410 N.W.2d 398 (Minn.Ct. App.1987), a first degree assault case where the victim sustained permanent and disfiguring injuries, the court held that even though infliction of great bodily harm was an element of the offense, the injury in that case could nonetheless be considered an enhancement factor because it was "significantly more serious than that typically involved in the commission of a first degree assault. This case did not simply involve one of the factors defining 'great bodily harm'; it involved *all* of them." *Id.* at 401. *State v. Mara*, 253 N.J.Super. 204, 601 A.2d 718 (1992), was an aggravated assault case involving a drunk driver who struck a victim and left the scene of the accident. The victim received extensive injuries. The court noted that the extent of the injuries was far in excess of that required to satisfy the New Jersey aggravated assault statute, and approved the use of the nature and extent of the victim's injuries as an enhancement factor. *Id.*, 601 A.2d at 723. However, other courts, including the Supreme Court of California, have rejected the "degree of harm" analysis. In *People v. Hawkins*, 15 Cal.App. 4th 1373, 19 Cal.Rptr.2d 434 (1993), the California court found that the term "serious bodily injury," within the meaning of its battery with serious bodily injury statute, was synonymous with the term "great bodily injury" in the enhancement statute, and concluded that a sentence could not be enhanced on that basis.

The language of the Tennessee statutes is similar to that of the California statutes. Under the Tennessee statute, the conditions which elevate an injury to the status of "serious bodily injury," are that the injury involves a "substantial risk of death," "protracted unconsciousness," "extreme physical pain," "protracted or obvious disfigurement," and "protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty." T.C.A. § 39–11–106(a)(33). These conditions satisfy the definition of a "particularly great" injury. The necessary conclusion is that proof of serious bodily injury will always constitute proof of particularly great injury. Consequently, the "degree of harm" analysis is not applicable to the Tennessee statute. Factor (6) is an element of the offense of aggravated assault causing serious bodily injury and cannot be used to enhance the defendant's sentence.

The Court of Criminal Appeals found applicable enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high. T.C.A. § 40–35–114(10). Again, the first question is whether this factor is an element of the offense of aggravated assault. The determinative language of this factor is "the risk to human life was high." The State suggested during argument that proof that a defendant hesitated before committing a criminal act would preclude use of this factor because it would somehow make him less culpable. The State argued that such hesitation implied that at least "the defendant had a conscience." That argument is not convincing. In homicide cases, hesitation or slowness in acting may indicate premeditation and deliberation and thereby increase culpability rather than decrease it. As a practical matter, hesitation or lack of hesitation does not submit readily to proof because of its subjective nature. The more logical interpretation of this enhancement factor places the emphasis on "risk to human life was high." Since evidence of high *risk* to human life obviously is not required to establish aggravated assault causing serious bodily *injury*, enhancement factor (10) is not an

element of the offense charged and is not precluded from consideration for enhancement purposes in this case.

■ Consequently, the issue is whether enhancement factor (10) is appropriate to this case. The legislature has determined that acts which cause high risk to human life may establish culpability beyond that necessary for conviction of a charged offense. Some activities by their very nature cause high risk to human life, for example, driving on a busy street under the influence of an intoxicant or firing a firearm into a crowd of people. This enhancement factor properly was found to be applicable to a conviction for vehicular homicide in *State v. Lambert,* 741 S.W.2d 127, 134 (Tenn.Crim.App.1987), in which, prior to striking the victims, the defendant drove an automobile recklessly through the University of Tennessee area of Knoxville while the streets and sidewalks were crowded with motorists and pedestrians. In that case, the defendant created a high risk of death or serious bodily injury to a large number of people prior to killing the particular victims. The defendant in *Lambert* demonstrated a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted.

In the case before the Court, there is no evidence that the defendant's actions created a high risk to human life. The defendant pushed the victim down with his hands. There is no suggestion that his action caused or increased risk either to human life in general or to the victim in particular, even though the result to her was serious bodily injury. Snatching a purse and pushing the victim to the ground demonstrated no culpability beyond that implicit in aggravated assault causing serious bodily injury. Thus enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high, is not applicable in this case.

■ The Court of Criminal Appeals also found that enhancement factor (16) applied. T.C.A. § 40–35–114(16). The State acknowledges that enhancement factor (16) is not applicable in this case. That factor, "the crime was committed under circumstances under which the potential for bodily injury to

a victim was great," is similar to enhancement factor (10). The condition "high risk of death" is not appreciably different from "the [great] potential for bodily injury." Again, the initial inquiry is whether proof that the potential for bodily injury was great would also prove an essential element of the offense charged. And, again, since the proof of this factor would not be required to prove the offense of aggravated assault causing serious bodily injury, this factor is not an element of the offense and may be used to enhance the defendant's punishment, if the facts of the case show it to be an appropriate enhancer.

■ The fact that bodily injury actually occurred, does not mean that the circumstances under which the crime was committed necessarily carried the great potential for bodily injury. The typical purse snatching incident, where the perpetrator simply approaches the victim, grabs the purse, and flees the scene, does not generally cause serious bodily injury and would not support a charge of aggravated assault. In this case, however, the defendant was charged with aggravated assault causing serious bodily injury, and the evidence that he knocked the victim to the ground thereby committing an assault that caused serious bodily injury was the proof on which he was convicted for aggravated assault. As discussed previously, the injuries the victim sustained were of the nature and extent included in the offense of aggravated assault. Since proof of aggravated assault causing serious bodily injury necessarily includes bodily injury, the proof that established the enhancement factor would not add to the offender's culpability. The facts do not demonstrate a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted. Consequently, factor (16) cannot be used to enhance the defendant's sentence.

In conclusion, the record does not support the application of enhancement factors (6), (10), or (16) in this case.

■ The only issue on appeal is the length of the appellant's sentence; the Court will determine the sentence. T.C.A. § 40–35–401(c) (1990). The range I sentence for aggravated assault is three to six years confine-

ment in the Department of Corrections. T.C.A. §§ 39–13–102(d) (1991); 40–35–112(a)(3) (1990). Therefore, the presumptive sentence is the minimum of three years. T.C.A. § 40–35–210(c). Since the least severe punishment authorized is a three-year sentence and there is no evidence of an application for probation, there is no issue with regard to confinement. The defendant has not contested the applicability of enhancement factor (1), that he has a history of criminal behavior, which is a significant factor in judging the defendant's culpability. No mitigating factors were presented, consequently, there can be no balancing of enhancement and mitigating factors and the applicable enhancement factor stands unmitigated. However, this is not an extreme case of aggravated assault causing serious bodily injury. Upon consideration of the facts and circumstances of the case and the applicable principles of sentencing, four years is found to be the appropriate sentence.

The judgment of the Court of Criminal Appeals is modified accordingly.

Costs are taxed to the State.

DROWOTA, O'BRIEN and ANDERSON, JJ., concur.

BIRCH, J., not participating.