IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2002

## STATE OF TENNESSEE v. MARQUEZ WINTERS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 97-11674-75    W. Fred Axley, Judge**

---

**No. W2001-00740-CCA-R3-CD - Filed October 15, 2002**

---

The Shelby County Grand Jury indicted the Defendant for two counts of especially aggravated kidnapping and for one count of criminal attempt to commit first degree murder. The Defendant was subsequently convicted of one count of aggravated kidnapping and of one count of criminal attempt to commit first degree murder. The trial court sentenced the Defendant to consecutive maximum sentences totaling thirty-seven years. The Defendant now appeals his sentences, arguing that the trial court erred in its application of enhancement factors, that the trial court improperly imposed maximum sentences for both convictions, and that the trial court erred in ordering the sentences to be served consecutively. Although the trial court erred in its application of certain enhancement factors, we conclude that it properly considered other enhancement factors which warranted sentencing the Defendant to consecutive maximum terms. Therefore, we affirm the sentences imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Garland Erguden, Assistant Public Defender, Memphis, Tennessee (on appeal); Timothy J. Albers and William Yonkowski, Assistant Public Defenders, Memphis, Tennessee (at trial), for the appellant, Marquez Winters.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William L. Gibbons, District Attorney General; and Reginald Henderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  PROCEDURAL HISTORY**

On November 4, 1997, the Shelby County Grand Jury returned two indictments against the Defendant, Marquez Winters. The first indictment charged the Defendant with one count of especially aggravated kidnapping involving serious bodily injury to the victim and with one count of especially aggravated kidnapping by use of a deadly weapon. The second indictment charged the Defendant with criminal attempt to commit first degree murder. After a jury trial, the Defendant was convicted under the first indictment of the lesser-included offense of aggravated kidnapping, a Class B felony, and under the second indictment of attempted first degree murder, a Class A felony. The trial court sentenced the Defendant to twelve years for aggravated kidnapping and to twenty-five years for attempted first degree murder. The sentences were ordered to be served at 100% and to run consecutively. The trial court later amended the Defendant's release eligibility on the attempted murder count from 100% to 30%. On appeal, the Defendant now challenges the propriety of his sentences.

## II. FACTUAL BACKGROUND

On the evening of May 18, 1997, Vernon Earnest, his sister, and Sherman Bennett were driving down Elvis Presley Boulevard, near Rose Hill Cemetery in Memphis, and noticed a naked and severely injured woman on the side of the road. When they stopped to help, the woman told them that "Low-down" and someone named Nicki or Nick had injured her.

Investigators later questioned the victim, Natalie Bolton, about the incident. The victim reported that she was a member of the Gangsters Disciples and that other gang members had forced their way into her apartment and assaulted her. The victim testified that three black females kicked her door in and dragged her from her home. As she resisted, they tore off her clothes and hit her on the head with a bottle. Two black males, one of whom the victim identified as the Defendant, were also present. Eyewitnesses at the apartment complex confirmed the victim's account of the abduction.

The victim testified that she was then placed in the back of a truck, blindfolded with a bandana, and driven to an unknown location. When the victim and her abductors arrived at the location, the victim was seated in a chair in the middle of a group of people. During this time, the victim was able to identify the voices of several of her abductors. The victim recognized the Defendant by his distinctively "squeaky" voice, which was the result of a gunshot wound to his throat. The victim also recognized the voice of the Defendant's girlfriend, Nadia. The victim testified that the Defendant tried to force her to drink a glass of bleach and ammonia, and when she refused, he poured the glass over her head and hit her in the face with the empty glass, knocking out a tooth. The victim testified that she and her abductors remained at this location for about one hour, and during that time, the Defendant continued to talk to her and to assault her.

The victim was then forced into the trunk of a car and driven to Rose Hill Cemetery. Her blindfold was secured, and another bandana was placed over her mouth. After arriving at the cemetery, the victim was forced to a secluded spot, where she listened to the Defendant and his girlfriend argue about who was going to shoot the victim first. The victim was then shot several

times. The shots were not fired in succession; rather, the Defendant and his girlfriend talked to each other between shots. The victim testified that she did not know who fired the first shot, but she was certain that the Defendant fired the last shot because her blindfold had slipped down around her neck. After "playing dead" for about fifteen minutes, the victim crawled to the road and was discovered by passers by.

A records clerk at the Regional Medical Center in Memphis testified that the victim was admitted on May 18, 1997 with six gunshot wounds in her chest, abdomen, and pelvis. The victim had also sustained facial and nasal fractures, loose teeth, bladder injuries, and bowel injuries.

While the victim was in the hospital, she identified the Defendant as one of her attackers. Investigators testified that they were initially unable to locate the Defendant for questioning. Eventually, the Defendant went to the police station and offered information about what he called "the Natalie Bolton murder." One officer testified that the Defendant told police he had heard about the incident through female members of the Gangster Disciples, but also stated that he had heard gunshots and had seen the shooter. Once the Defendant stated that he had been present at the crime scene, the officer informed him that the victim had not in fact died and that she had identified the Defendant as one of her attackers. At that point, the Defendant refused to further discuss the incident.

### III. ANALYSIS

On appeal, the Defendant argues that his sentence is improper. Specifically, the Defendant claims that the trial court erred in its application of enhancement factors concerning both offenses, that the trial court improperly imposed the maximum sentences for each conviction, and that the trial court erred in ordering the sentences to be served consecutively.

### A.  Enhancement Factors

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence. Id. The Defendant bears the burden of showing the impropriety of the imposed sentence. Id.

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). The presumptive sentence for a Class A felony is the midpoint

of the sentencing range unless there are enhancement or mitigating factors present. Id. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. Tenn. Code Ann. § 40-35-210 sentencing comm'n cmts.; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986). The trial record must contain specific findings of fact supporting the sentence, as well as any enhancement or mitigating factors used to arrive at that sentence. Tenn. Code Ann. § 40-35-209(c), 210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996).

The wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. See State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). A determination that one or more enhancement factors were improperly considered requires that we review the evidence supporting any remaining enhancement factors, as well as the evidence supporting any mitigating factors. State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002). Because the trial court improperly applied enhancement factors to each sentence, our review of the sentences is purely de novo.

### 1. Aggravated Kidnapping

The Defendant was charged with two "alternative" counts of especially aggravated kidnapping in one indictment. Count One alleged that a kidnapping of Natalie Bolton occurred and that Natalie Bolton suffered serious bodily injury. Count Two alleged that a kidnapping of Natalie Bolton occurred and that the confinement or removal of Natalie Bolton was accomplished with a deadly weapon. The jury chose to convict the Defendant of "aggravated kidnapping as included in the first count of the indictment."

On appeal, both the Defendant and the State have addressed the sentencing issues based on the logical assumption that because the aggravated kidnapping conviction is a lesser-included offense of Count One, the jury convicted the Defendant of kidnapping Natalie Bolton and that she suffered bodily injury rather than serious bodily injury. Compare Tenn. Code Ann. § 39-13-304(a)(4) with Tenn. Code Ann. § 39-13-305(a)(4). However, a close review of the jury instructions reveals that the jury was instructed on the elements of three alternative forms of aggravated kidnapping, none of which involves the victim suffering bodily injury.[1]

---

[1]The trial court instructed the jury pursuant to Tennessee Pattern Instructions - Criminal § 8.02, Parts A, C, and E. The instruction for aggravated kidnapping where the victim suffers bodily injury is Part D. See Tenn. Pattern Instructions - Crim. § 8.02, Part D.

-4-

Of the forms of aggravated kidnapping actually instructed by the trial court, only Tennessee Pattern Instructions - Criminal § 8.02, Part C, which tracks the language of Tennessee Code Annotated § 39-13-304(a)(3), defines a form of aggravated kidnapping that could properly be considered as a lesser-included offense under Count One. Therefore, for the purpose of analyzing the sentencing issues in this case, the elements of the offense for which the Defendant was convicted in Count One are as follows:

(1)     that the defendant knowingly removed or confined another unlawfully so as to interfere substantially with the other's liberty;

and

(2)     that the defendant acted with the intent to inflict serious bodily injury on or to terrorize the alleged victim or another.

Tenn. Pattern Instructions - Crim. § 8.02, Part C; see also Tenn. Code Ann. § 39-13-304(a)(3).

Although the jury was erroneously instructed that it could consider aggravated kidnapping as defined in Tennessee Code Annotated § 39-13-304(a)(1) and (5), see Tenn. Pattern Instructions - Crim. § 8.02, Part A, Part E, as lesser-included offenses of Count One, we conclude that this error was harmless beyond a reasonable doubt. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). The evidence that the Defendant was guilty of especially aggravated kidnapping was overwhelming, and the jury was properly instructed to consider aggravated kidnapping as defined in Tennessee Code Annotated § 39-13-304(a)(3). Thus, the jury's decision to convict the Defendant of the lesser-included offense of aggravated kidnapping based on the same evidence will not be disturbed on appeal.

In this case, the trial court applied the following enhancement factors in sentencing the Defendant to the maximum allowable sentence for his aggravating kidnapping conviction:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(2) The defendant was a leader in the commission of an offense involving two or more criminal actors;

. . . .

(5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

(6) The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;

. . . .

(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

(9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense;

(10) The defendant had no hesitation about committing a crime when risk to human life was high;

. . . .

(12) During the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim;

. . . .

[and]

(16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great . . . .

Id. § 40-35-114(1), (2), (5), (6), (8), (9), (10), (12), (16).  The court found no mitigating factors.

Enhancement factors must be "appropriate for the offense" and "not themselves essential elements of the offense." Id. § 40-35-114.

The obvious purpose of these limitations is to exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense.  Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment.  The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994).

The Defendant does not contest the application of enhancement factors (2) and (5).  It is uncontroverted that the Defendant was the leader in an offense involving two or more actors and that the victim was treated with exceptional cruelty.  Furthermore, although the Defendant asserts that his juvenile record was improperly considered under enhancement factor (1), he concedes that this was harmless given that his juvenile felonies could have properly been considered under factor (20), which allows sentence enhancement for prior juvenile convictions that would have been felonies if committed by an adult.  See Tenn. Code Ann. § 40-35-114(20).  Consequently, the Defendant concedes that the trial court properly considered three enhancement factors when sentencing him for aggravated kidnapping.  The Defendant does not argue that the trial court weighed these factors disproportionately or that the trial court improperly denied the application of any mitigating factors.

The Defendant first argues that the trial court improperly applied enhancement factor (6), which states that the victim sustained particularly great injuries, see id. § 40-35-114(6), because "serious bodily injury" is an element of the offense.  While "proof of serious bodily injury will always constitute proof of particularly great injury," Jones, 883 S.W.2d at 602; see also State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995), the offense of which the Defendant was convicted did not include "serious bodily injury" as an element.  See Tenn. Code Ann. § 39-13-304(a)(3).  The record reflects that the jury returned a guilty verdict on Count One of the lesser-included aggravated kidnapping charge.  For the reasons previously stated, this conviction includes a finding by the jury that the Defendant acted with the intent to inflict serious bodily injury on the victim or to terrorize her, but the actual infliction of bodily injury or serious bodily injury is not an element of the offense.  Additionally, the record supports the trial court's finding that the personal injuries inflicted upon the victim were particularly great.  Evidence was presented at trial that Natalie Bolton suffered a broken

nose, loose teeth, lacerations, and gunshot wounds to her chest, stomach, bladder, large intestine, and small intestine. Thus, the trial court properly considered and applied enhancement factor (6).

Next, the Defendant contends that the trial court improperly considered enhancement factor (8), "a previous history of unwillingness to comply with conditions of release into the community," id. § 40-35-114(8), by relying on the Defendant's juvenile record. The Defendant argues that enhancement factor (20) is the exclusive means for using juvenile convictions in sentencing enhancement. However, our supreme court has recently ruled that enhancement factor (20) is not the exclusive means for enhancing sentences by juvenile convictions and that a juvenile's probation violations may be considered in applying factor (8). See State v. Jackson, 60 S.W.3d 738, 743 (Tenn. 2001). In this case, the trial court properly considered the Defendant's juvenile history of unwillingness to comply with conditions of release into the community. The trial court cited the Defendant's removal from the Youth Services Bureau's "Hanover House Program" for failing to comply with the rules. Thus, we find no error in the trial court's application of factor (8) to enhance the Defendant's sentence.

The Defendant also argues that the trial court improperly considered enhancement factor (9), which provides that he possessed or employed a deadly weapon during the commission of the offense. See Tenn. Code Ann. § 40-35-114(9). The Defendant relies on the Sentencing Commission Comments for Tennessee Code Annotated § 39-13-305, which state: "Subdivision (a)(1) punishes a kidnapping in which a deadly weapon is actually used to threaten the victim. If a weapon is in the defendant's possession but is not used, the kidnapping is punishable pursuant to § 39-13-304, aggravated kidnapping." The Defendant asserts that the jury's rejection of the especially aggravated kidnapping charge "reflects its factual conclusion that the proof did not support a finding that [the Defendant] used a gun during the kidnapping." However, enhancement factor (9) requires only that the Defendant was in possession of a deadly weapon at the time of the offense. Further, neither the use or the possession of a deadly weapon is an element of the offense for which the Defendant was convicted. The trial court properly considered factor (9) where the record supported a finding that the Defendant possessed a deadly weapon at the time of the kidnapping.

Next, the Defendant argues that the application of factor (10), which states that the Defendant "had no hesitation about committing a crime when the risk to human life was high," id. § 40-35-114(10), was inappropriate because the State failed to establish that the Defendant "demonstrated a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted." Jones, 883 S.W.2d at 603. The Defendant claims that the record does not support a finding that his acts caused or increased the risk to human life in general or to the victim in particular.

This Court has concluded that enhancement factor (10) may be considered "where the conduct of the person has caused or increased risk either to human life in general or to the victim in particular and risk to human life is not an element of the offense." State v. Tim Fox, No. 03C01-9503-CR-00061, 1996 Tenn. Crim. App. LEXIS 371, at **13-14 (Tenn. Crim. App., Knoxville, June 21, 1996) (citing Jones, 883 S.W.2d at 603-604; State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987)); see also State v. John Allen Chapman, No. 01C01-9604-CC-00137,

1997 Tenn. Crim. App. LEXIS 950, at *65 n.34 (Tenn. Crim. App., Nashville, Sept. 30, 1997). Furthermore, the Tennessee Supreme Court has held that enhancement factor (10) is not inherent in offenses where serious bodily injury is an element of the offense charged. See Jones, 883 S.W.2d at 602-603; see also John Allen Chapman,1997 Tenn. Crim. App. LEXIS 950, at *65 n.34. It logically follows, then, that enhancement factor (10) is not inherent in offenses where the intent to inflict serious bodily injury is an element of the offense charged.

Enhancement factor (10) is not inherent in the offense of aggravated kidnapping in this case, because the Defendant's conviction for aggravated kidnapping was based upon the Defendant's intention to inflict serious bodily injury upon Natalie Bolton, or to terrorize her, while kidnapping her. Thus, it was appropriate for the trial court to consider enhancement factor (10) if the Defendant's conduct in kidnapping the victim caused or increased risk either to human life in general or to the victim in particular. See Tim Fox, 1996 Tenn. Crim. App. LEXIS 371, at **13-14. Although the Defendant's conduct did not cause or increase risk to individuals other than the victim, it did result in a high risk to the victim "distinct from and appreciably greater than that incident to the offense for which [the Defendant] was convicted." Jones, 883 S.W.2d at 603. The Defendant's conduct included participating in the abduction of the victim, during which the victim was hit in the head with a bottle. The Defendant tried to force the victim to drink a glass of bleach and ammonia, and when she refused, the Defendant poured the glass over her head and hit her in the face with the empty glass, knocking out a tooth. Later, the Defendant shot the victim multiple times. In our view, the evidence supports the trial court's application of factor (10) to enhance the Defendant's sentence.

The Defendant next challenges the trial court's application of enhancement factor (12), which states as follows:

> During the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim . . . .

Tenn. Code Ann. § 40-35-114(12).

Citing State v. Makoka, 885 S.W.2d 366 (Tenn. Crim. App. 1994), the Defendant asserts that the proof at trial "reflects no threat or injury to anyone other than the victim, nor does it show greater culpability than the legislature intended for aggravated kidnapping." See id. at 374. Relying on the assumption that the Defendant was convicted of aggravated kidnapping by inflicting bodily injury upon the victim, the Defendant further argues that the application of this factor constitutes the use of an essential element of the offense to enhance the sentence. However, as we have previously stated, "bodily injury" is not an element of the Defendant's conviction for aggravated kidnapping.

Our code states that "'bodily injury' includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty . . . ." Tenn. Code Ann. § 39-11-106(a)(2). In contrast, "serious bodily injury" is defined as "[a] substantial risk of death; . . . [p]rotracted unconsciousness; . . . [e]xtreme physical pain; . . . [p]rotracted or obvious disfigurement; or . . . [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty . . . ." Id. § 39-11-106(a)(34). The record

reveals that the victim in this case suffered numerous serious bodily injuries inflicted during her kidnapping which were not elements of the offense of aggravated kidnapping for which the Defendant was convicted. Evidence presented at trial indicates that the victim nearly lost her life as a result of the crimes in this case and that she was beaten to the point that she remained hospitalized in critical condition for an extended period of time after the crimes. Evidence presented at trial also indicates that the victim sustained permanent physical damage after her initial recovery. Based upon this evidence of serious bodily injury inflicted upon the victim, we conclude that enhancement factor (12) was properly used to enhance the Defendant's sentence for aggravated kidnapping.

Finally, the Defendant argues that factor (16), which provides for enhancement of a sentence if "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great," id. § 40-35-114(16), is an element of the crime and should not be used to enhance his sentence. Here, we conclude that the language found in enhancement factor (16), "committed under circumstances under which the potential for bodily injury to a victim was great," id., is so similar to the element of aggravated kidnapping, that the defendant acted "with the intent to inflict serious bodily injury," id. § 39-13-304(a)(3), as to essentially be an element of the offense. Because this factor is synonymous with an element of the offense, the trial court erred in using it to enhance the Defendant's sentence for aggravated kidnapping.

The Defendant concedes that the trial court properly considered three enhancement factors when imposing the maximum sentence for his conviction for aggravated kidnapping. Furthermore, the Defendant does not challenge the weight given to these factors. In addition to the three enhancement factors conceded by the Defendant, the record supports the application of factors (8), (9), (10), and (12). Furthermore, the erroneous application of enhancement factors (1) and (16) does not necessarily lead to a reduction in sentence length. See Winfield, 23 S.W.3d at 284. Our review of the evidence supporting these enhancement factors leads us to conclude that the trial court properly imposed upon the Defendant the maximum sentence within the applicable range for aggravated kidnapping.

## 2. Criminal Attempt, First Degree Murder

With the exception of enhancement factor nine (9), possession of a firearm, the trial court considered the same factors listed above when sentencing the Defendant for criminal attempt to commit first degree murder. Again, no mitigating factors were found. The Defendant does not contest application of factors (2), (5), and (6), and although he asserts that factor (1) was erroneously applied by the trial court, he again concedes that his juvenile felonies could have been properly considered under factor (20). The Defendant asserts that the trial court erred in applying the remaining factors.

The Defendant challenges the application of factor (8) as set forth above. See Tenn. Code Ann. § 40-35-114(8). We have addressed this issue and determined that the trial court may properly consider the Defendant's juvenile probation violations in applying enhancement factor (8). We thus

conclude that the trial court properly considered enhancement factor (8) when sentencing the Defendant for attempted first degree murder.

The Defendant also challenges the application of factor (10), which states that he showed no hesitation in committing a crime when the risk to human life was high, see id. § 40-35-114(10); and factor (16), which states that under the circumstances of the crime, the potential for bodily injury to the victim was great. See id. § 40-35-114(16). This Court has previously held that enhancement factors (10) and (16) should not be applied to sentences for attempted first degree murder because "risk to human life and the great potential for bodily injury always exist with an attempted first degree murder." Nix, 922 S.W.2d at 903. Therefore, the trial court improperly considered these enhancement factors when determining the length of the Defendant's sentence for attempted first degree murder.

Finally, the Defendant challenges the application of factor (12), that he willfully inflicted bodily injury upon a victim or that his actions resulted in the death of or serious bodily injury to a victim. See Tenn. Code. Ann. § 40-35-114(12). The Defendant relies upon State v. Makoka, 885 S.W.2d 366 (Tenn. Crim. App. 1994), in support of his argument. In Makoka, this Court held that enhancement factor (12) may not be applied to a sentence for attempted murder because the potential for serious bodily injury is inherent in the offense. See id. at 374. However, subsequent cases from this Court have called this holding from Makoka into question. In State v. Freeman, 943 S.W.2d 25 (Tenn. Crim. App. 1996), this Court, relying upon language from a Tennessee Supreme Court case, recognized that the crime of attempted murder does not require bodily injury and therefore concluded that the holding of Makoka concerning the applicability of enhancement factor (12) was of "questionable validity." Id. at 32; see also State v. Trusty, 919 S.W.2d 305, 308 (Tenn. 1996). This Court has subsequently reiterated its conclusion that enhancement factor (12) may be applied to a sentence of attempted murder. See State v. Jimmy A. Salyer, No. 03C01-9803-CR-00093, 1999 Tenn. Crim. App. 988, at *28 (Tenn. Crim. App., Knoxville, Oct. 8, 1999). Relying upon the most recent cases from our Court, we conclude that enhancement factor (12) was properly applied to the Defendant's sentence for attempted murder. In committing the crime of attempted murder, the Defendant inflicted serious bodily injury upon the victim, as previously discussed, thus justifying application of enhancement factor (12).

Although the trial court improperly considered enhancement factors (1), (10) and (16) when sentencing the Defendant for criminal attempt to commit first degree murder, the record supports the trial court's application of the remaining factors. Those six remaining enhancement factors are sufficient to warrant the maximum sentence for this conviction. Therefore, we affirm the sentence imposed by the trial court.

### B. Consecutive Sentencing

When a defendant is convicted of one or more offenses, the trial court must determine if the sentences shall be served concurrently or consecutively. Tenn. Code Ann. § 40-35-115. Consecutive sentencing may be imposed in the discretion of the trial court upon a determination by a preponderance of the evidence that one or more of the following criteria exist:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist . . . ;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . .;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7). In addition to these criteria, consecutive sentencing is subject to the general sentencing principles providing that the length of a sentence should be "justly deserved in relation to the seriousness of the offense," id. § 40-35-102(1), and "no greater than that deserved for the offense committed." Id. § 40-35-103(2); see also Imfeld, 70 S.W.3d at 708. Moreover, in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), the supreme court articulated two additional requirements for consecutive sentencing under the dangerous offender category; the trial court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. See id. at 938; see also State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999) (stating that the need for the additional Wilkerson findings arises in part because the "dangerous offender" provision "is the most subjective and hardest to apply"); Imfeld, 70 S.W.3d at 708.

The Defendant argues on appeal that the trial court improperly ordered the sentences imposed for aggravated kidnapping and attempted first degree murder to be served consecutively. In doing so, the trial court determined by a preponderance of the evidence that the Defendant is an offender whose record of criminal activity is extensive. See Tenn. Code Ann. § 40-35-115(b)(2). The evidence presented at the sentencing hearing revealed that the Defendant's criminal history included twelve complaints filed against him before he had reached the age of seventeen. Further, three of the Defendant's juvenile convictions would have been felonies had he been convicted as an adult. The evidence in the record supports the trial court's finding that the Defendant is an offender whose record of criminal activity is extensive. Moreover, even if the trial court erred in its determination that the Defendant's record of criminal activity is extensive, we have concluded that the Defendant is clearly a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. See Tenn. Code Ann. § 40-35-115(b)(4). The total length of the consecutive sentences for the two convictions, thirty-seven years, is justly deserved in relation to the seriousness of these brutal and vicious offenses. We further conclude that the consecutive sentences imposed by the trial court are reasonably related to the severity of the offenses committed and will serve to protect the public from further criminal conduct by this Defendant. See Wilkerson, 905 S.W.2d at 938.

Therefore, we AFFIRM the judgments of the trial court.

_____

ROBERT W. WEDEMEYER, JUDGE