# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 20, 2011

## STATE OF TENNESSEE v. JEFFERY B. JOHNSON, JR.

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2008-CR-172      George C. Sexton, Judge**

---

**No. M2010-01721-CCA-R3-CD - Filed June 20, 2012**

---

The defendant, Jeffrey B. Johnson, Jr., was tried on two counts of first degree (premeditated) murder, and after a jury trial was found guilty of two counts of voluntary manslaughter, Class C felonies. The defendant was sentenced as a Range I, standard offender to five years on each count, with the sentences to be served consecutively, for an effective sentence of ten years. The defendant challenges the sentences imposed by the trial court, claiming error in the trial court's application of certain enhancement factors, its failure to apply certain proffered mitigating factors, and its decision to order the defendant's sentences to be served consecutively. Considering the State's concession that the trial court's application of two of the enhancement factors was error, the trial court's failure to consider all of the evidence that was presented at trial during sentencing, and the state of the record before us, we conclude that this case should be remanded to the trial court for resentencing consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Vacated and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

William B. (Jake) Lockert, III, District Public Defender, and Dawn Kavanagh, Kathleen Mitchell, and Connie Jones, Assistant Public Defenders, for the appellant, Jeffery Byrd Johnson, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Dan Mitchum Alsobrooks, District Attorney General; and Carey Thompson and Ray Crouch, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

On New Year's Eve of 2007, the victims in this case, Ms. Mary Clark and her mother-in-law, Ms. Gail Clark, were killed by two foster children they cared for – the defendant and his co-defendant, Mr. James Garett. Each victim was executed by a single shot to the head. After initially blaming the killings on a mysterious "dark figure," both the defendant and the co-defendant gave statements to police identifying the other as the shooter. Both were charged with two counts of first degree premeditated murder.

Co-defendant Garett eventually pled guilty to two counts of second degree murder in exchange for his testimony against the defendant. After a trial on April 1-9, 2009, a jury found the defendant guilty of two counts of criminal responsibility for the conduct of another in committing voluntary manslaughter. On November 25, 2009, the trial court sentenced the defendant as a Range I, standard offender to five years on each count, for a total effective sentence of ten years to be served in the Department of Corrections.

At the defendant's sentencing hearing, the State relied upon the witnesses and proof produced at trial, as well as the defendant's pre-sentence report. The State also urged the trial court to take judicial notice of numerous juvenile records that were contained in the trial court's file (which had been transferred to it by the juvenile court). The defendant strenuously objected to the trial court's use of the defendant's juvenile records for sentencing purposes. The defendant urged that he was "not given notice the state intended to use [the defendant's] criminal history" and urged that the criminal history contained therein was not included in the defendant's pre-sentence report.

The State argued that the defendant's juvenile records reflected that the defendant was on probation in juvenile court on the offenses of assault and theft at the time the crime was committed. The defendant argued that he was not on probation and requested a continuance in order to get the appropriate records. The State argued that the entire juvenile record was part of the trial court's file and "speaks for itself," urging that the State was not required to provide notice that it was going to be used against the defendant and, moreover, that the defendant should already have been aware of, and was in fact aware of, the existence of those records in the trial court's files. The trial court overruled the defendant's request for continuance. Prior to passing sentence, the trial court took a brief recess and reviewed its internal files. However, the court trial did not state that it was taking judicial notice of some or all of those files or otherwise indicate that they were entered into evidence.

The State argued that the trial court should find and apply the enhancement factors set

forth in the defendant's presentence report, including the facts that: (1) a firearm was used in the commission of the offense; (2) the defendant was a leader with respect to the commission of the offense, which involve two or more actors; (3) the offense involved more than one victim; (4) the defendant had no hesitation about committing a crime when the risk to human life was high; and (5) the victim of each offense was particularly vulnerable. In addition, the State argued that the defendant's sentences should be enhanced because the defendant committed the offenses while on probation, and because the defendant had committed one or more acts as a juvenile which would have constituted a felony if committed as an adult.

The defendant argued that no enhancement factors should apply. The defendant claimed that the proof at trial did not establish that the defendant was a leader with respect to the offenses and moreover established that co-defendant Garett was the leader and the defendant was the follower with respect to the offenses. The defendant claimed that the enhancement factor concerning offenses involving more than one victim did not apply because the defendant was convicted of a separate offense with respect to each victim. The defendant argued that the enhancement factor involving the commission of a crime when the risk to human life was high was inapplicable because the only risk to human life created by the defendant's crimes was the risk to the victims, and this risk was already an inherent element of each offense. The defendant argued that the enhancement factor concerning the age and vulnerability of the victims was inapplicable because both victims were slain by gunshot wounds to the head, and their age would not have affected their vulnerability with respect to this type of attack. Concerning his use of a firearm to commit the offenses, the defendant argued that, by its verdict, the jury had necessarily concluded that co-defendant Garrett was the actual shooter, and therefore there was no evidence that the defendant had used a firearm to commit the offenses.

The defense also proffered several mitigating factors. First, the defendant argued that he was acting under duress created by co-defendant Garrett when he committed the offenses and that, as reflected by the jury's verdict of manslaughter, he acted under strong provocation. The defendant also urged that the strong influence that co-defendant Garrett exerted over him established both that he played a minor role in the offenses and that grounds existed to excuse his criminal conduct. Consequently, both of these mitigating factors should also be applied. Furthermore, the defendant argued that the mitigating factor concerning the defendant's lack of substantial judgment in committing the offenses due to youth should apply because he was fifteen at the time of the killings. In addition, the defendant argued that the overwhelming influence that co-defendant Garrett had over him meant that the mitigating factor concerning the presence of unusual circumstances rendering it unlikely that the defendant's conduct was motivated by a sustained intent to violate the criminal law was applicable. Finally, the defendant argued that the mitigating factor that he had acted under

the duress or domination of another person also applied to his crimes, again based on the overwhelming influence the defendant claimed that his co-defendant held over him.

After hearing these arguments, the trial court found that the defendant was a Range I, standard offender. As such, the applicable sentencing range for each of his Class C felonies was three to six years. The trial court held that two enhancement factors were applicable: (1) that the defendant had no hesitation in committing a crime when the risk to human life was high, and (2) that the defendant had a previous history of criminal behavior above that necessary to establish his range. The trial court declined to find that the defendant had committed the crimes at issue while on probation, stating that after going through the defendant's juvenile court records (contained in its own internal files) the court "could not find for certain that he was on probation." It appears, however, that the trial court did rely on these records to support its finding that the defendant had engaged in criminal activity above that necessary to establish his range.

The trial court found only one mitigating factor to be applicable: that the defendant lacked substantial judgment in committing the offenses due to his youth. The trial court proceeded to weigh the aggravating factors and the mitigating factors and concluded that the former greatly outweighed the latter. The trial court sentenced the defendant to five years on each count.

Concerning how these two sentences should be served, the State argued that the defendant should serve at least a portion of these sentences in prison and that he should serve the two sentences consecutively because he was an especially dangerous offender. The defendant argued that his sentences should not be served consecutively, and that he should be permitted to serve them on probation. The trial judge denied alternative sentencing and imposed consecutive sentences.

In so doing, the trial judge observed that although the relevant statute, Tennessee Code Annotated section 40-35-210(b), stated that he "shall consider," in "determin[ing] the specific sentence . . . that shall be imposed," *inter alia*, "the evidence . . . received at the trial," he believed that he should limit his consideration only to the evidence presented at trial that supported the lesser crimes of which the defendant stood convicted. Even so, the trial court stated that the defendant's convictions involved "two executions that occurred . . . New Year's night," that these crimes were "aggravated," and that the jury had found that the defendant had "helped to cover it up." Consequently, the trial court concluded that "[c]onfinement of this defendant for an extended period of time [wa]s necessary to protect society from the defendant's unwillingness to lead a productive life in society" as well as his continuing "antisocial lifestyle." The trial court further concluded that the defendant's effective sentence of ten years reasonably related to the severity of the offenses of which he

stood convicted.

The defendant filed a timely motion for new trial, which was denied. The defendant filed a timely notice of appeal to his sentence on August 5, 2005. This matter was submitted on briefs on July 20, 2011. Our decision follows.

## ANALYSIS

The defendant raises numerous challenges to the trial court's application of enhancement factors, the length of the sentences imposed, and the trial court's decision to order the defendant's sentences to be served consecutively. The State concedes, and we agree, that the trial court erred in applying both enhancement factors. Normally, this error would prompt us to engage in a *de novo* review of the defendant's sentencing, but the record before this court is insufficient to allow us to properly evaluate the potential applicability of several other aggravating factors. Consequently, we remand the case for resentencing with the following principles in mind.

"The burden of demonstrating that a sentence is erroneous is upon the party appealing." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). If the trial court has considered all the proper sentencing principles and relevant facts and circumstances, our review of a defendant's sentence is *de novo* with a presumption that the trial court's determinations are correct. *Id.* at 344-45. "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Carter*, 254 S.W.3d at 345 (internal quotation omitted).

An as initial matter, the trial court's entire sentencing analysis in this case may have been affected by an erroneous premise – that it could not or should not consider any evidence presented at trial that was seemingly rejected by the jury when it found the defendant guilty of only lesser included offenses. To the contrary, a trial judge "shall consider" all evidence submitted at trial and at sentencing in reaching a decision concerning an appropriate sentence. T.C.A. § 40-35-210(b) (2009). Consequently, consideration of all the proof presented at trial is a statutory mandate, one which trial courts are not free to disregard. As this court has stated, "the trial court is required to take into account all of the evidence presented at the trial and the sentencing hearing," and "if evidence of a . . . factor or factors is presented at the trial or the sentencing hearing, the trial court is required to consider them in the sentencing process." *State v. Lyle T. Van Ulzen and Billy J. Coffelt*, No. M2004-02462-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 1151, at *10 (Tenn. Crim. App. Oct. 31, 2005). The fact that a jury finds the defendant guilty of, or a defendant pleads guilty to, only a lesser included offense does not limit the evidence that must be considered by a trial court in determining the appropriate sentence. *See, e.g., State v. Terence Alan Carder*,

No. W2008-01450-CCA-R3-CD, 2009 Tenn. Crim. App. LEXIS 522, at **5-9 (Tenn. Crim. App. June 30, 2009) (affirming sentence in pertinent part of a defendant who was sentenced to confinement based on evidence presented at his sentencing hearing reflecting that he stole approximate $200,000, even though he pled guilty to theft of less than $10,000); *State v. James R. Smith*, No. M2005-00615-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 105, at **24-31 (Tenn. Crim. App. Jan. 31, 2006) (affirming denial of alternative sentencing to defendant who was charged with two counts of aggravated rape and one count of attempted aggravated kidnaping, but found guilty only of the lesser included offenses of rape, sexual battery, and attempted false imprisonment). Instead, "trial court[s] [should] look beyond the jury's verdict to the actual facts or circumstances of the offense." *Smith*, 2006 Tenn. Crim. App. LEXIS 105, at *31. Upon remand the trial court shall consider all evidence presented at trial and look beyond the jury's verdict to arrive at an appropriate sentence.

The State concedes that the trial court erred in sentencing the defendant by relying on two enhancement factors that the record reveals were not applicable on the facts of this case. Enhancement factor (1): "The defendant had a previous history of criminal convictions or behavior, in addition to those necessary to establish the appropriate range," T.C.A. § 40-35-114(1), may not be applied in this case because it has been held to be mutually exclusive with enhancement factor (16): "The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult," T.C.A. § 40-35-114(16). *See State v. Jackson*, 60 S.W.3d 738, 742-43 (Tenn. 2001). Enhancement factor (1) applies only to adult criminal conduct or behavior. *See id.* 742. The criminal behavior at issue was committed while the defendant was a juvenile, and as such, could be considered only for purposes of applying enhancement factor (16). *See id.*

As the State also concedes, the trial court erroneously applied enhancement factor (10): "The defendant had no hesitation about committing a crime when the risk to human life is high," T.C.A. §40-35-114(10), because, on the facts of this case, the entirety of the risk to human life posed by the defendant's conduct was subsumed into the elements of the offenses of which he stood convicted. The evidence at trial established that the two victims in this case were executed by single shots to the head while they were lying prone and helpless; their lives were the only ones placed at risk by the defendant's conduct, and their deaths are an inherent element of the defendant's voluntary manslaughter convictions. "To justify the use of [enhancement factor 10], the state must prove the defendant 'demonstrated a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted,'" such as in the case of a homicide where the defendant's conduct posed a threat to a large number of people before a particular victim was killed. *State v. Belser*, 945 S.W.2d 776, 792 (Tenn. Crim. App. 1996) (quoting *State v. Jones*, 883 S.W.2d 597, 603 (Tenn. 1994)). Such additional culpability is not present in this case.

We discern no error with respect to the trial court's rejection of the various mitigating factors proffered by the defendant. All of these factors that were based on the same premise – that co-defendant Garrett was the shooter, and that the defendant only assisted him in carrying out these crimes under provocation and the duress, undue influence, and coercion forced upon him by co-defendant Garrett. While the defendant claims the trial court erred by rejecting these mitigating factors because the jury's verdicts support his version of events, there was ample evidence put forth by the State at trial – including the testimony of co-defendant Garrett – that the defendant was the one who bore primary responsibility for instigating the offenses and was, in fact, the one who shot the victims. The trial court was free to rely upon this evidence to reject the defendant's claim that he was a mere "patsy" (whose sole role in events was to "take a charge" for co-defendant Garrett), and consequently to reject each of the numerous mitigating factors advanced by the defendant based on this theory.

The trial court's misapplication of enhancement factors would normally trigger pure *de novo* review of the defendant's sentences by this court. However, in this particular case the state of the record on appeal convinces us that conducting such a *de novo* review of the defendant's sentences would be improvident. While the record is complete enough for this court to make determinations on issues such as whether the defendant used a firearm in the commission of the offenses, *etc.*, there is a dearth of material in the record concerning two potentially important factors aggravating factors – factor (13)(C), whether the defendant was on probation at the time of the offense, and factor (16), concerning whether the defendant committed a delinquent act as a juvenile that would have constituted a felony if committed as an adult. *See* T.C.A. § 40-35-114(13) & (16). The material necessary to properly analyze and apply these factors may be in the trial court's internal files and/or in the files of other courts, but regardless, it has not yet been entered into evidence and is not part of the record on appeal. Consequently, in light of the unusual facts and posture of this case, we conclude that it should be remanded to the trial court for resentencing consistent with this opinion.

**CONCLUSION**

Because the trial court erroneously limited its consideration of evidence at sentencing to that which was supported by the jury's verdict, erroneously applied two enhancement factors, and because the state of the record renders appellate *de novo* review of the defendant's sentences improvident, on the facts of this case we elect to vacate the judgments of the trial court and remand the defendant's case for resentencing.

_____
JOHN EVERETT WILLIAMS, JUDGE

-7-