IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2003

## STATE OF TENNESSEE v. WINSTON CHADRICK McCLAIN

**Appeal from the Circuit Court for Marshall County**
**No. 14990     Charles Lee, Judge**

_____

**No. M2002-02178-CCA-R3-CD - Filed July 15, 2003**

_____

The defendant, Winston Chadrick McClain, pled guilty in the Marshall County Circuit Court to aggravated robbery, a Class B felony, with the length of the sentence to be determined by the trial court. The trial court sentenced him as a Range I, standard offender to eleven years in the Department of Correction (DOC). The defendant appeals, claiming that his sentence is excessive because the trial court improperly applied enhancement factors and failed to apply and give proper weight to mitigating factors. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

N. Andy Myrick, Jr., Fayetteville, Tennessee, for the appellant, Winston Chadrick McClain.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the robbery of Christie Moore. At the defendant's guilty plea hearing, the state gave the following account of the crime: On the night of March 18, 2002, the victim and her boyfriend were in bed when some men forced their way into her home. The men wore masks and pointed a long-barrel gun at the victim and her boyfriend. The men also pointed the gun at one of the victim's three children and threatened the child. The men took the victim at gunpoint into her living room, stole her purse, which contained $30, and fled. A short time later, the police captured two of the robbers. The robbers told the police that someone named Chad had also participated in the crime. Several days later, the police arrested the defendant, who told them the following: He and some men went to the victim's home in order to rob it. One of the men had a gun and kicked open the front door. The defendant and the man with the gun went into the victim's bedroom, and

the defendant demanded that the victim give them money. Someone in the house gave the defendant an envelope, the defendant put the envelope into the victim's purse, and the defendant and the men fled.

At the defendant's sentencing hearing, Christie Moore testified that on the night of March 18, four men entered her home by kicking in her back door and robbed her. Another woman, the victim's three young children, and the victim's boyfriend were also in the home. She said that during the robbery, her five-year-old daughter was awakened when one of the robbers stepped on the little girl's puppy. She said that her daughter came out of a bedroom and tried to comfort the puppy. She said that the robbers pointed the pistol at her daughter and told her daughter that if she did not make the puppy be quiet they were going to shoot her and the dog. She said that before the robbery, she had received $43,600 from an insurance settlement and that she had told some people about the money. She said that the robbers only took $30, that she could not identify them because they wore masks, and that she saw two guns, a rifle and a pistol.

Detective James Whitsett of the Lewisburg City Police Department testified that he investigated the robbery. The police found a rifle in the yard next to the victim's home and arrested two men. The men gave the police the defendant's name, and seven or eight days later, the police arrested the defendant. On cross-examination, Detective Whitsett testified that the defendant gave a statement in which he confessed to the crime.

Judy Byrd from the Parole and Probation Department testified that she prepared the defendant's presentence report. She said the defendant had a juvenile adjudication for aggravated assault. The defendant also had been on probation as a juvenile and was on escape status when he committed the present offense. The defendant and his three codefendants stated that the defendant had entered the victim's home during the robbery. On cross-examination, Ms. Byrd testified that the defendant cooperated with her and did not deny his involvement in the robbery.

Elizabeth West, the Director of Juvenile Court Services, testified that the defendant was originally charged as a juvenile with aggravated robbery and that his case was bound over from juvenile to circuit court in order for him to be tried as an adult. At the time of the crime, the defendant was on escape status from an alcohol and drug treatment facility. According to the defendant's presentence report, on March 9, 2000, the defendant kicked a boy in the head and caused the boy to lose consciousness.

The defendant testified that at the time of the sentencing hearing and the crime, he was fifteen years old. He said that on March 22, he, Wayne Harris, Mark Beard, and Calvin Oliver robbed the victim. He said that when they arrived at the victim's home, Mr. Harris had a gun and kicked in the door. He said that Mr. Beard went into a front bedroom of the home and that he and Mr. Harris went into the victim's bedroom. He said that Mr. Harris pointed the gun at the victim and her boyfriend and that the defendant demanded money from the victim. He said that he and Mr. Harris then went into a room in the front of the house and that someone told him the money was in a purse and on a table. He said that someone handed him an envelope, that he put the envelope in the victim's purse,

and that he and the men fled the house. He said that he was younger than his codefendants and that at least one of them was over twenty years old. He said that Mr. Harris had heard the victim had received some money and that it was Mr. Harris's idea to rob the victim. He said that at the time of the crime, he was on the run. He said he felt bad about robbing the victim and regretted going to the victim's house with his three codefendants. He said that at the time of the hearing, he had been in jail for four months and two weeks. He said that he wanted to get his GED and that he had been diagnosed with attention deficit hyperactivity disorder, which makes him hyperactive and do things without thinking.

On cross-examination, the defendant acknowledged that he did not regret committing the crime until he had spent time in jail and thought about what he had done. He said that after robbing the victim, he went to Columbia, Tennessee and spent one night in a hotel. He said that he then returned to Lewisburg and stayed at a friend's house. He said that he had been in the juvenile court system since he was ten or eleven years old and that he had been sent away from home about three times. He acknowledged pleading guilty to aggravated assault as a juvenile in 2000 but said that he only hit the boy and did not kick him in the head. He said that in 2000, he also was convicted of carrying an automatic pistol. He said that during the robbery in question, he never held a gun but told the victim and her boyfriend to give him the money. He said that to his knowledge, the victim's children were asleep during the entire incident. He said that after he and his codefendants left with the victim's money, he abandoned the money because the police were chasing them. He said that Mr. Harris, Mr. Oliver, and Mr. Beard talked about the robbery for ten to fifteen minutes before he decided to participate in it.

Upon being questioned by the trial court, the defendant testified that he began using marijuana when he was eight years old and cocaine when he was twelve. He said that he had been in two alcohol and drug treatment programs and that he had been on probation and supervised by the juvenile court since he was ten years old. He said that during the robbery, Calvin Oliver stayed on the front porch to serve as a lookout and that he never saw a pistol.

According to the defendant's presentence report, in addition to being found delinquent for aggravated assault and possession of an automatic weapon, the defendant also has juvenile adjudications for possession of marijuana and cocaine, evading arrest, disorderly conduct, and criminal trespassing. The report shows that the defendant dropped out of high school during the tenth grade and ran away from home. In the report, the defendant stated that he has no mental problems but that he has had a problem with high blood pressure for a couple of years. He also stated that he began using alcohol when he was ten years old, used marijuana on a daily basis from age eleven until he was incarcerated, and began using cocaine when he was twelve. The defendant stated that he sometimes used cocaine on a daily basis and that he spent twenty-eight days in an alcohol and drug treatment facility. He said that he failed a drug test, was returned to the facility, and had to spend another three months in a treatment program.

The trial court noted that as a Range I offender, the defendant's range of punishment was eight to twelve years in confinement. See Tenn. Code Ann. § 40-35-112(a)(2); see also Tenn. Code

Ann. § 40-35-210(c) (providing that the presumptive sentence for a Class B felony is the minimum in the range if no enhancement or mitigating factors are present). The trial court stated that it was shocked by the information contained in the defendant's presentence report and that the juvenile court system had tried unsuccessfully to deal with the defendant since the defendant was eleven years old. It ruled that enhancement factors (2), that the defendant "was a leader in the commission of an offense involving two (2) or more criminal actors;" (8), that the defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;" (11), that the felony "involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury;" and (14), that the defendant committed the felony while on escape status, applied to his sentence. See Tenn. Code Ann. § 40-35-114(2), (8), (11), (14) (Supp. 2001) (amended 2002).[1] In addition, the trial court applied enhancement factor (20), that the defendant "committed acts as a juvenile that would constitute a felony if committed by an adult," and determined that the factor was entitled to considerable weight. See Tenn. Code Ann. § 40-35-114(20) (Supp. 2001) (amended 2002).

Regarding mitigating factors, the trial court held that factors (6), that the "defendant, because of youth or old age, lacked substantial judgment in committing the offense," and (13), that the defendant had taken responsibility for the crime, applied. See Tenn. Code Ann. § 40-25-113(6), (13). However, the trial court stated that those factors were entitled to very little weight. The trial court enhanced the defendant's sentence to twelve years and then reduced his sentence by one year for the mitigating factors for a sentence of eleven years in the DOC. See Tenn. Code Ann. § 40-35-210(e).

The defendant appeals, claiming that his sentence is excessive. He contends that the trial court erred by applying enhancement factor (2) regarding his being a leader in the commission of the offense because the evidence showed that he was merely a participant in the crime. In addition, he claims that the trial court erred by applying enhancement factor (11), that the felony "involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury," because the trial court improperly considered his juvenile adjudication for aggravated robbery as the previous felony that resulted in death or bodily injury. As to mitigating factors, the defendant argues that the trial court did not give sufficient weight to factor (6) regarding his lack of judgment due to youth. Finally, he contends that the trial court erred by refusing to apply factor (12), that he acted under the domination of another person. The state concedes that the trial court improperly applied enhancement factor (11) because the defendant was found delinquent of aggravated assault as a juvenile. However, it argues that the defendant's sentence is not excessive because the trial court properly applied the other enhancement and mitigating factors and because it should have applied enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life is high, to his

---

[1] The legislature's 2002 amendment to Tenn. Code Ann. § 40-35-114 added as the new enhancement factor (1) that the "offense was an act of terrorism" but changed the existing enhancement factors only by increasing their designating number by one.

sentence. See Tenn. Code Ann. § 40-35-114(10) (Supp. 2001) (amended 2002). We conclude that the defendant's sentence is not excessive.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

The sentence to be imposed by the trial court is presumptively the minimum in the range for a Class B felony unless there are enhancement factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d)-(e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

In conducting our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

As to the defendant's claim that no factual basis exists for the application of enhancement factor (2), that he was a leader in the commission of the offense, the evidence revealed at the guilty plea and sentencing hearings shows that the defendant, Wayne Harris, and Mark Beard entered the victim's home while Calvin Oliver waited outside. Mr. Beard went into a front bedroom, and the defendant and Mr. Harris went into the victim's bedroom, where they pointed guns at the victim and her boyfriend. The defendant then demanded the victim's money, and he and Mr. Harris forced her into the living room. The defendant then took the victim's purse and an envelope from the home. The evidence shows that Calvin Oliver and Mark Beard participated in the crime, but to a lesser degree than Mr. Harris and the defendant. We conclude that the evidence does not preponderate against the trial court's finding that enhancement factor (2) applied.

Regarding enhancement factor (11), the state correctly concedes that the trial court should not have applied the factor based on the defendant's prior adjudication for aggravated assault as a juvenile. See State v. Carl Johnson, No. W2000-00278-CCA-R3-CD, Shelby County, slip op. at 11 (Tenn. Crim. App. Apr. 4, 2001) (holding that trial court improperly applied factor (11) based upon the defendant's juvenile adjudication for involuntary manslaughter). A juvenile delinquency adjudication is not a felony conviction. However, the state contends that the trial court should have applied enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(10) (Supp. 2001) (amended 2002). We agree. As charged in the indictment, the defendant pled guilty to aggravated robbery accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). Enhancement factor (10) is inapplicable to the conviction because "there is necessarily a risk to human life and the great potential for bodily injury whenever a deadly weapon is used." State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). Nevertheless, this court has held that when factor (10) is inherent in the offense relative to the victim, it still may apply if a person other than the victim was in the area of high risk. See State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987); see also State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1995). In this case, the evidence reveals that the victim's boyfriend was in bed with her when the defendant entered the room and pointed the gun at them. Thus, factor (10) is applicable.

The defendant also claims that the trial court erred by giving little weight to mitigating factor (6), that he lacked substantial judgment in committing the offense because of his youth. The trial court held that this factor was entitled to extremely little weight because of the defendant's prior contact with the juvenile system. As previously stated, as long as the trial court followed the sentencing purposes and principles, the weight to be afforded an existing factor is left to the trial court's discretion. Moreover, our supreme court has held that a defendant's youth should be considered in the context of the defendant's education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct. State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). In this case, the defendant has been using alcohol since he was ten, marijuana on a daily basis since he was eleven, and cocaine since he was twelve. He has been in an alcohol and drug treatment facility twice, dropped out of high school in the tenth grade, and has a lengthy juvenile record. He testified at his sentencing hearing that he was on the run when he committed the offense in question,

and his crimes are becoming more serious.  We find nothing in the record to indicate that the defendant was unable to appreciate the nature of his conduct.

Finally, the defendant contends that the trial court should have applied mitigating factor (12), that he acted under the domination of another person, because it was Wayne Harris's idea to rob the victim and because he is younger than all of his codefendants.  However, at no time did the defendant testify that he acted under the control of any of his codefendants.  To the contrary, he testified that he heard the three men talking about committing the crime for about ten to fifteen minutes and that he decided to join them.  Nothing in the record supports the application of this factor, and the trial court did not err by refusing to apply it to the defendant's sentence.  The trial court properly sentenced the defendant to eleven years in the DOC.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE