IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 15, 2009

**STATE OF TENNESSEE v. TIMOTHY MARK AGEE, II**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-A-750     Monte Watkins, Judge**

**No. M2009-01046-CCA-R3-CD - Filed April 22, 2010**

The Defendant, Timothy Mark Agee, II, appeals his conviction upon a guilty plea in the Davidson County Criminal Court for second degree murder, a Class A felony. The trial court sentenced the Defendant to serve twenty-three years. The Defendant appeals, contending that the sentence imposed is too lengthy. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant(s), Timothy Mark Agee, II.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Deborah M. Housel, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's conviction relates to the death of Dustin Mitchell. At the guilty plea hearing, the State recited the following facts:

> [I]f this case had gone to trial . . . the State's [witinesses] . . . would testify that on May the 6th, 2007, at about four-thirty, officers responded to a shooting call at 97 Antioch Pike here in Davidson County. When they arrived on the scene they saw that there were two cars that were involved in a head-on collision. The victim's car, a 1991 Chevy Cavalier, driven by Dustin

Mitchell was – actually had the jaw of life as fire department and other personnel were trying to get the victim out of the car. The victim suffered extensive damage from the [head-on] collision. He was taken to Vanderbilt Hospital. On May the 11th, 2007, . . . the victim was pronounced dead at Vanderbilt Hospital because of the head-on collision and the blunt force trauma that he received.

On his vehicle . . . there were four to five strike marks that officers saw on the scene, in addition to five casings that were found on the scene. Detective Scott Sulfridge took the case. And once Detective Sulfridge began investigating he spoke – he and other Metropolitan Police Department officers – spoke to about fifteen different people who said that it originated at a market here in Davidson County.

What actually happened was that Mr. Melton, Jason Melton, was in the car with [the defendant]. Mr. Dustin Mitchell, who was the victim in the case, actually went to a market to get a loaf of bread for his mother. . . . When he went to the market he hit the defendant's car, and got out, looked at the damage, looked at [the defendant], and became frightened and got back in his car. At that time, [the defendant], who became enraged, began following the victim.

The victim went down Antioch Pike, made a U-turn and came back in the other direction. The defendant was chasing him in his car. The defendant got a gun out of the glove box and began firing. And, according to one witness, emptied his magazine into the car that was being driven by the victim. The victim, in an attempt to avoid being hit by a bullet[,] ducked down in the seat. And when he ducked down in the seat he swerved onto an oncoming automobile, which was a 2000 Isuzu Rodeo.

When [the defendant] was questioned by Detective Sulfridge he denied any knowledge of the collision whatsoever. He denied that anyone had hit his car. But this was further verified that Officer Greg Curtis, who was able to show that

-2-

actually the victim's car had hit the defendant's car in the market.

At the sentencing hearing, the court received the Defendant's presentence report. It reflected that the Defendant was twenty-two years old at the time of the crime and twenty-four at the time of sentencing. He had convictions for reckless driving, four misdemeanor drug offenses, and attempt to purchase alcohol under age twenty-one. The Defendant admitted prior illicit drug use, although he claimed he had not used drugs daily since age twenty-two and had quit using them weekly at age twenty-four. He was a high school graduate and had a technical certification. Defense counsel stated at the hearing that the Defendant disputed the reckless driving conviction because a relative had used the Defendant's identification. The presentence report reflects that the Defendant had dismissed charges of reckless driving and aggravated burglary, and the district attorney stated at the sentencing hearing that these charges were dismissed as part of the plea agreement in this case. The district attorney stated that the dismissed reckless driving charge was related to a hit-and-run the Defendant admitted occurred later on the evening of the crime in this case.

Jason Housel testified for the State that he was with the Defendant at the time of the offense. He said they went to a supermarket, where the victim sideswiped the Defendant's car. He said that they got out of the car and that the victim started to get out of his car and looked at them with a "scared look on his face." He said the victim got back into his car and drove away. He said they chased the victim along Nolensville Road and Antioch Pike, at one point running a red light trying to get the victim's license plate number. He said that the victim eventually made a U-turn and that they followed him. He said the Defendant asked him to retrieve a gun from the glove compartment. He said he handed the gun to the Defendant, who shot at the victim's car five or six times. He said the victim ducked down, and the victim's car veered into oncoming traffic and had a head-on collision.

Vindeda Mitchell testified that she was the victim's mother. She said the nineteen-year-old victim was a hard worker who contributed to the household, even walking to work in frigid, snowy weather. She said he spent more time with his family than he did with friends his own age. She said the victim dreamed of having a child of his own someday.

Ms. Mitchell testified that on May 6, 2007, the victim had taken off work to spend the day with his family at his grandmother's house. She said they needed bread, and the victim volunteered to go to the store. She said the next time she saw the victim was at Vanderbilt Hospital. She said the victim was comatose for five days and eventually died. She said that it was horrifying to see the victim's injuries. She said that the burial expenses were a hardship for her family and that she still had not been able to afford a headstone for the victim's grave.

-3-

Detective Scott Sulfridge of the Metropolitan Police Department testified that he investigated the crash scene. He said the Defendant was developed as a suspect based on a description of his car and later identification of the car as being the Defendant's. He said he spoke with the Defendant, who admitted that he had a wreck on May 6. The Defendant said, however, that he hit a van and that it had taken place later than the time of the crime. Detective Sulfridge said that the crime was also investigated. He said the Defendant denied any involvement in the crime involving the victim or that he had been in the area at the time of the crime. He said the Defendant stated that he had never seen the victim in his life.

Detective Sulfridge testified that a traffic officer later inspected the Defendant's and the victim's cars and determined that the cars made contact. He said he interviewed Jason Melton, who told him about the Defendant's involvement.

The State read two letters from the victim's cousin and aunt. The letters recounted the victim's role in his family and the family's loss.

The Defendant offered an allocution. He admitted his involvement in the crime, stating that the victim did not see his car and backed into it, that he chased the victim, and that he fired five to seven shots at the victim's car. He said he was not trying to shoot the victim, just his car. He said he had a son and now realized the victim's mother's loss. He apologized to the victim's family. He said he did not admit his involvement when he was questioned a couple of nights after the crime because he was afraid.

The trial court ruled that the Defendant's allocution had been testimonial and allowed the State to cross-examine him. He denied he was trying to kill the victim and maintained that he was only trying to get the victim to stop. He admitted that he shot his brother-in-law about a month and a half after he shot the victim, but he said he was very depressed, and it was accidental. He acknowledged that he had a criminal charge for aggravated burglary arising after this crime.

The trial court applied four enhancement factors to the Defendant's sentence. It found that the Defendant had a previous history of criminal convictions or criminal behavior, that the personal injuries inflicted on the victim were particularly great, that the Defendant possessed or employed a firearm during the commission of the offense, and that the Defendant had no hesitation about committing a crime when the risk to human life was high. See T.C.A. § 40-35-114(1), (6), (9), (10) (Supp. 2007) (amended 2008). The court set the sentence length at twenty-three years.

On appeal, the Defendant contends that the sentence imposed is excessive. He claims that the trial court erred in its application of the enhancement factors for prior criminal

history and particularly great personal injuries and asks this court to give him a sentence at or near the bottom of the range of fifteen to twenty-five years. The State concedes that the court erred in applying the factor for particularly great personal injuries but argues that the remaining factors support the twenty-three-year sentence.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d) (2006). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); see T.C.A. § 40-35-210(e).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

In imposing a specific sentence within the appropriate range of punishment for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210.

We agree with the parties that the trial court should not have applied factor (6) based upon its finding that the victim's injuries were particularly great. The trial court's stated reason for doing so was that the victim died from his injuries. Death is an element of second degree murder. See id. § 39-13-210. An enhancement factor may be considered "[i]f appropriate for the offense and if not already an essential element of the offense." Id. § 40-35-114.

We disagree, however, with the Defendant's argument that the trial court erred in applying factor (1) for prior criminal convictions or behavior. The Defendant argues that his reckless driving conviction resulted from his cousin's assuming the Defendant's identity, and that his only other convictions are for simple possession and an underage attempt to purchase alcohol. He contends that his other charges have been dismissed and that they occurred in a brief period of time before he became focused after the birth of his child.

The presentence report reflects that the Defendant had four prior misdemeanor drug convictions, not one. Although the report lists nine offenses on the same date, it notes that five of these were dismissed and lists convictions of the remaining four. The four convictions listed each have different docket numbers. Aside from the disputed reckless driving conviction, which we have not considered, the Defendant had charges for reckless driving and leaving the scene of an accident that were dismissed as part of the plea agreement. The reckless driving charge was related to his wreck with a van later on the evening of the crime. The Defendant admitted prior illicit drug use The evidence in the record supports the application of this factor.

The Defendant argues that his sentence should be "[t]he least severe measure necessary to achieve the purposes for which the sentence is imposed." See id. § 40-35-103(4). He contends that he has taken full responsibility and apologized for his actions, which he says took place in the heat of the moment.

Upon de novo review, we hold that despite the trial court's misapplication of enhancement factor (6), the court did not err in setting the Defendant's sentence at twenty-three years. The remaining factors were entitled to substantial weight and support the sentence length. The Defendant had a history of criminal conduct. He committed an egregious crime involving a car chase through metropolitan Davidson County and firing shots at another car. His conduct was egregious and inexcusable, and a sentence of twenty-three years was appropriate.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE