IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 23, 2010

## STATE OF TENNESSEE v. RICKY LEE GANN, alias Rickey Lee Gann

**Appeal from the Criminal Court for Hamilton County**
**Nos. 266161, 266582, 267011, 268375, & 268376    Barry A. Steelman, Judge**

_____

**No. E2009-01272-CCA-R3-CD - Filed June 29, 2010**

_____

The Defendant, Ricky Lee Gann, alias Rickey Lee Gann, pled guilty to seven counts of theft of property valued $1,000 or more, a Class D felony, two counts of theft of property valued $500 or more, a Class E felony, and two counts of theft of property valued $500 or less, a Class A misdemeanor. Following a sentencing hearing, the Defendant was sentenced to an effective six-year term in the Tennessee Department of Correction, followed by twelve years of probation. In this appeal as of right, the Defendant contends that the trial court erred in ordering consecutive sentences and in denying alternative sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Ardena J. Garth, District Public Defender; Richard Kenneth Mabee, Assistant Public Defender; and Jane J. Buffaloe, Assistant Public Defender, attorneys for appellant, Ricky Lee Gann.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; District Attorney General; William H. Cox, District Attorney General; and Boyd Patterson, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

## OPINION

The Defendant was indicted for eleven counts of theft and nine counts of misapplication of contract payments. At the Defendant's March 4, 2009 guilty plea hearing, the State summarized the proof that it would have presented had the Defendant's case gone to trial:

> [H]ad these cases gone to trial, the proof would have shown that this was a particularly widespread scam where the victims in all these cases . . . provided this [D]efendant with money for the [D]efendant to construct and provide gravestones for the victims' loved ones who are deceased, and the proof would show that this [D]efendant in none of these cases ever did that work.

The Defendant then pled guilty to eleven counts of theft of varying classes, and the State dismissed all of the other counts of misapplication of contract funds.

A sentencing hearing was held on May 18, 2009, in which several witnesses testified. James Rox of the Board of Probation and Parole testified regarding the Defendant's prior criminal history. The Defendant had seven prior convictions arising out of similar transactions that occurred in McMinn, Rhea, and Sequatchie counties. The Defendant also had seven pending charges that related to similar transactions that occurred in Knox, Whitfield, and Dade counties. The Defendant was still working at River City Monuments when the offenses which led to these convictions and pending charges occurred. The Defendant also had a 1996 federal conviction, which resulted in the Defendant's incarceration in federal prison from February 1997 to September 1998. The Defendant also owed approximately $961,000 in restitution for his past federal conviction.

Velma Masiers testified that the Defendant contacted her after her husband died and that the Defendant sold her a headstone, which she never received. She did not know how the Defendant obtained her personal information to contact her. Ms. Masiers paid the Defendant $1,085 as a down payment for a headstone but was only able to reach the Defendant one time. The Defendant told her that he would have the design for the headstone very soon. After this contact, Ms. Masiers was not even able to contact the Defendant to pay the remaining balance for her order.

Linda Bottomley testified that she gave the Defendant $1,885 in cash when she purchased a grave marker from the Defendant for her mother and father and that she never received the marker. The Defendant told her that the marker should be ready in December; however, the marker was not there the following April. Ms. Bottomley contacted the Defendant, who told her that a marker was ready but that it was the wrong size. Ms. Bottomley told the Defendant that she didn't care about the size and that she would just take what was completed. The Defendant insisted that he would install the right size, but the Defendant never installed any markers.

Ms. Bottomley also testified that her son went to work for River City Monuments and that he told her that he never saw the Defendant at the business. She then contacted several granite companies and found the Defendant at another company. She stated that the Defendant was the person who contacted her after her mother died and that the Defendant came to her house to discuss the sale.

James Daughetee testified that Billy Fairbanks contacted him a few weeks after his son died and sold him a monument for his son, who was a firefighter. Mr. Daughetee paid River City Monuments $3,300 and never received the monument. He contacted the business several times and was referred to the Defendant, who assured him that he would have the monument soon.

Stacy Banther testified that his mother, who had laryngitis and was unable to testify, bought a headstone from the Defendant for her mother, the witness's grandmother. The Defendant said that it would take eight weeks to set the stone. After approximately eight weeks, they were unable to contact the Defendant.

Patricia Essex testified that she bought a headstone for her husband's grave. She stated that the Defendant contacted her and that she paid him $1,311 for the headstone. The Defendant told her it would take three months for the headstone to arrive. After three months passed, Ms. Essex was unable to reach the Defendant.

Betty Odmann testified that she bought a headstone for her brother from the Defendant after the Defendant contacted her. She paid the Defendant $306 for the headstone, and the check was made payable to the Defendant. After approximately two months, she was unable to contact the Defendant.

Clara Mae Pritchett testified that she purchased a headstone for her niece's grandfather and grandmother. Ms. Pritchett went to the Defendant's office and asked him about purchasing a headstone after her niece told her about the Defendant's business. After paying the Defendant the down payment, she was unable to contact the Defendant.

Vicki Lowery testified that she purchased a headstone for her husband after the Defendant called her house. The Defendant came to her house to discuss the sale, and Ms. Lowery purchased a headstone for $620. Ms. Lowery eventually found the Defendant after paying him, and the Defendant asked her to refrain from contacting the police. The Defendant promised her that he would get the headstone for her but that it would take time. She stated that she may not be able to be buried by her husband if she does not reserve her place with the headstone.

The Defendant presented several witnesses on his behalf. The Defendant's father, Richard Gann, and mother, Cynthia Gann, both testified that the Defendant could live with them without paying rent while the Defendant paid restitution to the victims. Richard Gann further testified that the Defendant simply made a mistake in participating in the River City Monument Company, which was undercapitalized from the start of the business. He stated that the Defendant was trying to deliver the headstones but was simply unable fulfill the contracts. He stated that the Defendant eventually went to work for another company so that he could make more money and pay for the headstones that were never made at River City Monuments.

On cross-examination, Richard Gann admitted that the Defendant received checks for the business that were payable to the Defendant. He then explained that the Defendant received checks payable to him because "the company's checking account had been shut down due to a cancelled . . . check that put everything in the red." He insisted that the company did not have any money left even though they were receiving payments and not fulfilling the contracts. When asked about the Defendant's prior federal conviction, Richard Gann stated, "Well, that was a different, a younger person, a younger person that was talked into going into a legitimate business . . . ."

Ms. Gann further testified that the Defendant would be required to stay at her house "unless he goes to work or goes and sees his child" while fulfilling the terms of any probationary sentence. However, she said that she would tell the Defendant "not to turn himself in" if he were to break the terms of a probationary sentence.

Stephanie Juntunen, the Defendant's sister, testified that the Defendant is a good husband and father and that she was aware of the problems at River City Monuments. She insisted that the Defendant is a "good-hearted person" and that he left the company to work for another company that would help him fulfill the contracts. She insisted that the Defendant fulfilled some contracts.

Ronnie Gann, the Defendant's brother, testified that the Defendant is a man of integrity and would "give you the last dime he has" and that "[h]e'll pick you up for a ride if you need it, he'll give you the shirt off his back if need be."

Joel Davenport, the director of programs for the Transformation Project, testified that the Defendant was welcome to participate in his program. Mr. Davenport said that the Transformation Project is a "[C]hristian alternative sentencing and rehabilitation program" that helps people "change their lives through . . . intensive structure and accountability and character education." He stated that he had worked with the Defendant extensively and that he believed that the Defendant "got[] himself in a very big mess, and oftentimes that's really

when God can show off the most in changing people's lives." He stated that the program would oversee the Defendant and ensure that he fulfilled the terms of his probationary sentence and that if the Defendant were to fail to comply with any terms, he would have the Defendant taken into custody.

He admitted that he had concerns about the Defendant's home plan given Ms. Gann's testimony. He also admitted that the Defendant's family is "an enabling family that's willing to make excuses for him even when he himself is standing up to the plate and taking responsibility." He stated that the Defendant first came to work with the project in May 2008 and that the Defendant began to participate shortly after the Defendant arrived in Hamilton County. Mr. Davenport also wrote a letter in support of the Defendant in which he stated that "[m]any times [the Defendant] places his own desires and wants aside to serve the needs of others around him."

Reverend Billy Smith, the chaplain at the Hamilton County Jail, testified that the Defendant was an "inmate worker for about six months." He stated that the Defendant was "there every day five days a week that I was in the jail, probably at least eight hours every day, and [he] spent a lot of time counseling with [the Defendant] and trying to mentor [the Defendant]." He stated that he "really believe[s] [that the Defendant] wants to be responsible."

On cross-examination, Reverend Smith admitted that he "believed [the Defendant's] intention was to complete the work." He stated that "there were at least three other people that probably should have been charged in the case." He also admitted that he "was a little bit alarmed" about the Defendant's family and their attitudes about the Defendant's responsibility in his case.

Following the sentencing hearing and the Defendant's allocution, the trial court sentenced the Defendant as follows:

| Case Number | Count & Charge | Disposition & Sentence |
|---|---|---|
| 266161 | Count 1 Theft, Class D felony | 3 years to serve |
| 266161 | Count 3 Theft, Class D felony | 3 years to serve; consecutive to count 1 |
| 266161 | Count 5 Theft, Class D felony | 3 years; suspended to 12 years probation; consecutive to count 3 |

| 266161 | Count 7 Theft, Class D felony | 3 years; suspended to 12 years probation; consecutive to count 3 |
|---|---|---|
| 266161 | Count 9 Theft, Class A misdemeanor | 11 months, 29 days; suspended to probation; consecutive to count 3 |
| 266161 | Count 11 Theft, Class D felony | 3 years; suspended to 12 years probation; consecutive to count 3 |
| 266582 | Count 1 Theft, Class A misdemeanor | 11 months, 29 days; suspended to probation; consecutive to case number 266161, count 3 |
| 266582 | Count 3 Theft, Class E felony | 2 years; suspended to 6 years probation; consecutive to case number 266161, count 3 |
| 267011 | Count 1 Theft, Class E felony | 2 years; suspended to 6 years probation; consecutive to case number 266161, count 3 |
| 268375 | Count 1 Theft, Class D felony | 3 years; suspended to 12 years probation; consecutive to case number 266161, count 3 |
| 268376 | Count 1 Theft, Class D felony | 3 years; suspended to 12 years probation; consecutive to case number 266161, count 3 |

This appeal follows in which the Defendant contends that the trial court erred in imposing consecutive sentences and in denying alternative sentencing.

## ANALYSIS

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and

circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review:

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the defendant's potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The Defendant committed these offenses on various dates occurring in 2006 and 2007; thus, he was sentenced under the revised sentencing act as enacted by the Tennessee General Assembly in 2005. The act provides that:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> > (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2).

## A. Consecutive Sentencing

The Defendant contends that the trial court erred in imposing consecutive sentences because his record of criminal activity was not extensive. The State responds that the Defendant has a criminal record that consists of ten prior convictions and seven pending criminal charges.

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). In all cases where consecutive sentences are imposed, the trial court is required to "specifically recite [on the record] the reasons" behind imposition of consecutive sentences. State v. Palmer, 10 S.W.3d 638, 647-48 (Tenn. Crim. App. 1999) (noting the requirements of Rule 32(c)(1) for purposes of consecutive sentencing); See Tenn. R. Crim. P. 32(c)(1).

In ordering that the Defendant serve two of his sentences consecutively followed by a consecutive twelve-year term of probation, the trial court stated,

> The [c]ourt finds that the [D]efendant is an offender whose record of criminal activity is extensive. He has multiple convictions here, he has multiple convictions in Rhea county, multiple convictions in Sequatchie County, and he has a history that goes back to a [f]ederal episode where he . . . went to the [f]ederal penitentiary. So he does have an extensive criminal record, or his record of criminal activity is extensive. A lot of it is related to this particular case, but the [c]ourt does rely on that for purposes of the ability of the [c]ourt to find consecutive sentences.

In support of his contention that the trial court erred in ordering consecutive sentences for two of the eleven counts, the Defendant argues that the trial court erroneously relied on the fact that more than one victim was involved in the Defendant's case. The record does not

reflect that the trial court relied on the fact that more than one victim was involved. While it is true that more than one victim was harmed by the Defendant, the Defendant was convicted of separate offenses, each offense involving a different victim. Furthermore, the record establishes that the Defendant has a criminal record consisting of a federal conviction and several other convictions that are related to the instant offenses resulting from his activities in other counties. Accordingly, we conclude that the record does not preponderate against the trial court's sentencing decision regarding consecutive sentencing.

## B. Alternative Sentencing

The Defendant contends that the trial court erred in denying alternative sentencing. The State responds that the Defendant received an alternative sentence in that most of his sentences were suspended to probation following his limited period of incarceration. The State also responds that the Defendant has failed to show how the record preponderates against the trial court's findings.

The Defendant was convicted of a Class D felony (and several lesser classes of offenses). Therefore, he was to be "considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, this consideration does not automatically entitle a defendant to alternative sentencing; rather, sentencing issues "must be determined by the facts and circumstances presented in each individual case." State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing Moss, 727 S.W.2d at 235). The defendant must establish his suitability for alternative sentencing. Tenn. Code Ann. § 40-35-303(b). The defendant must demonstrate that probation would promote justice and the best interest of the defendant and the public. State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing Tenn. Code Ann. § 40-35-103(1)(A)-(C)). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

In denying alternative sentencing, the trial court stated,

But the [c]ourt finds that the nature and the characteristics of the criminal conduct involved are such that confinement would be appropriate in this case . . . .

The [c]ourt does find here that full probation here would unduly depreciate the seriousness of the offense.

And the [c]ourt should also consider the potential or lack of potential for rehabilitation, and the [c]ourt finds the fact he was convicted of a felony in [f]ederal [c]ourt in 1996 that got him a 21-month sentence, and here we are in 2006, 2007, dealing with alleged fraudulent behavior, admitted theft, that that goes a long way for the [c]ourt from the standpoint of determining whether or not that confinement should be ordered from the standpoint of his, his amenability to rehabilitation, his potential for it.

We must first note that all but two of the Defendant's sentences were suspended to probation. The Defendant pled guilty to eleven counts of theft of varying classes. The Defendant has a prior history of criminal conduct as evidenced by his federal conviction and his convictions from other counties occurring before the convictions in his case. Following our review, we conclude that the trial court gave appropriate consideration to the sentencing factors in arriving at its determination. Accordingly, we also conclude that the trial court's decision to deny alternative sentencing is supported by the record.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-10-